UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOE SHIELDS, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>INPHONIC, INC., a Delaware Corporation,<br><br>Defendant. | No. 1:06-cv-01911-CKK<br><br>**Jury Trial Demanded** |

**JOINT STATEMENT PURSUANT TO LOCAL CIVIL RULE 16.3**

Counsel for Plaintiff Joe Shields ("Plaintiff") and counsel for Defendant InPhonic, Inc. ("InPhonic") (collectively, the "parties"), having conferred pursuant to Fed. R. Civ. P. 26(f) and LCvR 16.3 respectfully submit this Joint Statement addressing the topics listed in LCvR 16.3(c) and in the Court's February 16, 2007 Order.[1]

**I.      Brief Statement of the Case**

      **A.      Plaintiff's Complaint and Class Certification Motion**

Plaintiff filed this lawsuit on November 8, 2006 alleging a violation of Section 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq. See* Compl. ¶¶ 3, 27. Plaintiff seeks to bring this action on behalf of a class of allegedly similarly situated wireless telephone subscribers, and therefore alleges that this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d). *Id.* ¶¶ 8, 21.

---

[1] The parties first conferred concerning LCvR 16.3(c) issues on February 12, 2007, and completed their conference on February 28, 2007.

Plaintiff alleges that, "[i]n or about March, 2005," either InPhonic or its agent "used an automatic telephone dialing system to make [unsolicited] text message calls to cellular telephone users in Texas and in other states in the United States, including a text message to the cellular telephone owned by Plaintiff."  Compl. ¶ 14.  The text message received by Plaintiff allegedly referenced "Cingular"—Plaintiff's wireless telephone carrier—and it offered recipients the opportunity to download "your team's fight song or school logo" in connection with the "NCAA March Madness" basketball tournament.  *Id.* ¶ 15.  Plaintiff alleges that he received a single such text message on March 28, 2005, and that the only identifying information in the "from" field of the message was "sync.windcaster."  *Id.* ¶¶ 15-17.

Plaintiff allegedly contacted Cingular and was informed that this text message "was not from Cingular and was considered a SPAM text message."  Compl. ¶ 18.  The Complaint alleges that InPhonic must have sent the text message in question because InPhonic at that time "owned and operated a text messaging system called Windcaster, which transmits text message advertisements to cellular telephones on behalf of Defendant and Defendant's customers."  *Id.* ¶ 13.  Plaintiff accordingly seeks for himself, and for each member of the putative class, $500.00 in statutory damages under the TCPA for each text message allegedly sent by InPhonic in violation of the TCPA, with the possibility of "treble the amount of statutory damages" if such alleged violations "were willful and knowing."  *Id.* ¶¶ 28-29.  In seeking class certification, Plaintiff asserts that factual questions common to the putative class include:  "Are text message transmissions within the purview of the TCPA?"[2]; and, "Did InPhonic use an automatic telephone dialing system when it transmitted these calls?"  Dkt. #5, at 7.

---

[2]    The TCPA does not expressly apply to text messages.  Plaintiff submits (Dkt. #5, at 2-3) that text messages are within the scope of the TCPA.  InPhonic submits that the Court need not resolve that issue because Plaintiff's claim against InPhonic should be dismissed based on other essential elements of a TCPA claim.  *See* Section II.1, *infra.*

2

B.     **InPhonic's Answer and Defenses**

InPhonic filed its Answer on January 9, 2007, in which it:  (i) denied that the Court had subject matter jurisdiction over the action (Dkt. #4, ¶ 8); (ii) denied the material allegations of the Complaint, and stated that "InPhonic once owned and licensed the WindCaster software platform to AT&T Wireless, which later merged with Cingular Wireless, until approximately April of 2005 when WindCaster was sold to a third-party" (*Id.* ¶¶ 13-20); (iii) denied that this lawsuit could properly be maintained as a class action (*Id.* ¶¶ 21-23); and (iv) disputed the legal sufficiency of Plaintiff's claim and asserted affirmative defenses, including that Cingular Wireless was a necessary and indispensable party and that the damages alleged in the Complaint "were caused entirely, if at all, by other parties and not InPhonic." *Id.* at 7-8.

Subsequently, through counsel, Cingular (now known as AT&T) advised InPhonic and Plaintiff that AT&T intends to move to intervene in this action and to assert that it is the real party-defendant in interest because Cingular, not InPhonic, sent the text message of which Plaintiff has complained.  Further, InPhonic understands that AT&T expects to assert that the TCPA did not prohibit its text message communication with Plaintiff (and those similarly situated) because wireless carriers may send unsolicited text messages to their subscribers when subscribers are not charged for receipt of the message.  *See* 47 U.S.C. § 227(b)(1)(A)(iii); *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C.R. 14014 n.610, 2003 WL 21517853 at *59 (July 3, 2003); *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CC Docket No. 92-90, Report and Order, 7 F.C.C.R. 8752 ¶¶ 43-45, 1992 WL 690928 at *15-16 (Oct. 16, 1992).[3]

---

[3]     Alternatively, if AT&T does not intervene and seek summary judgment in defendants' favor on this basis, then InPhonic would move for summary judgment on the ground that the WindCaster technology that it formerly owned was not "an automatic telephone dialing system" within the meaning of the TCPA, and that WindCaster did not have the capacity to—and, in fact, did not—

**II.     LCvR 16.3(c) Issues.**

    **1.     Dispositive Motions**

AT&T has represented that its predecessor company, Cingular Wireless—and not InPhonic—sent the text message in question. InPhonic has represented that the text message in question was a Cingular advertisement. Plaintiff notes that, in response to AT&T's representation, he provided both to InPhonic and to AT&T a "Complaint Response Form" that Cingular filed with the Federal Communications Commission wherein it disclaims involvement in the text message received by Plaintiff. Nevertheless, Plaintiff has indicated that if AT&T's documents—which AT&T apparently is attempting to gather—end up supporting AT&T's claim and if AT&T did not charge its customers for the receipt of these text messages, Plaintiff will be inclined to voluntarily dismiss his lawsuit.

InPhonic submits that, if Plaintiff does not voluntarily dismiss his lawsuit, then it would be appropriate for the Court to rule on a motion for summary judgment, to be made either by AT&T or by InPhonic (*see supra* at 3 & n.3), before addressing class certification. *Cruz v. American Airlines*, 150 F.Supp.2d 103, 111 (D.D.C. 2001) (Kollar-Kotelly, J.)("If the resolution of the summary judgment motion may eliminate the need to consider the certification motion *ab initio*, the court's interest in preserving judicial resources, as well as the resources of the litigants, counsels in favor of addressing the summary judgment motion first"), *aff'd*, 356 F.3d 320 (D.C. Cir. 2004); *accord Curtin v. United Airlines*, 275 F.3d 88, 92 (D.C. Cir. 2001) ("[W]here the merits of the plaintiffs' claims can be readily resolved on summary judgment, where the defendant seeks an early disposition of those claims, and where the plaintiffs are not prejudiced thereby, a district court does not abuse its discretion by resolving the merits before considering the question of class certification"); *Manual for*

---

"make a call" to Plaintiff or to any other member of the putative plaintiff class, as the TCPA requires to sustain a claim for relief. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

*Complex Litigation (Fourth)* § 21.133, at 253 & n.771 (2004) (citing *Curtin v. United Airlines*, and encouraging "[e]arly resolution" of motions addressed to the sufficiency of the plaintiff's claim, which "may avoid expense for the parties and burdens for the court" in putative class actions). InPhonic understands that by proceeding with summary judgment prior to a decision on class certification, it would be waiving its protection under the one-way intervention rule. *See Postow v. OBA Federal Sav. And Loan Ass'n*, 627 F.2d 1370 (D.C.Cir. 1980); *Hyman v. First Union Corp.*, 982 F.Supp. 8 (D.D.C. 1997).

The parties respectfully request that the Court allow them a period of three weeks, or until and including March 23, 2007, either to determine that Plaintiff will voluntarily dismiss his claim or to propose a schedule for summary judgment proceedings before the Court addresses Plaintiff's motion for class certification. The parties respectfully submit that this proposed schedule is consistent with the Court's Order of February 14, 2007, holding in abeyance further proceedings on Plaintiff's class certification motion pending the Initial Scheduling Conference to be held on March 6, 2007.

**2.     Joinder/Amendment**

InPhonic has alleged (Answer, Dkt. #4 at 7) that Cingular Wireless (now AT&T) is a necessary and indispensable party. AT&T may intervene as a defendant in this action. Section II.1, *supra*. If AT&T does not intervene, then InPhonic respectfully submits that it should be allowed until April 23, 2007 to move to join AT&T as a party to this action. Plaintiff has no opposition to this schedule.

**3.     Magistrate Judge**

The parties do not believe the case should be assigned to a magistrate judge for all purposes, including trial.

### 4. Settlement

As noted, there is a possibility that Plaintiff may voluntarily dismiss this action. If not, then InPhonic does not believe that settlement of this case is likely at this time.

### 5. Alternative Dispute Resolution

As noted, there is a possibility that Plaintiff may voluntarily dismiss this action. If not, then InPhonic does not believe that settlement of this case is likely at this time.

### 6. Resolution by Summary Judgment

*See* Section II.1, *supra.*

### 7. Initial Disclosures

The parties have agreed to defer initial disclosures at least until March 23, 2007, after which they will propose a schedule for further proceedings if this action is not voluntarily dismissed. Section II.1, *supra.*

### 8. Discovery/Protective Order

The parties have agreed to defer discovery, and discussion of a protective order, at least until March 23, 2007, after which they will propose a schedule for further proceedings if this action is not voluntarily dismissed. Section II.1, *supra.*

### 9. Expert Witnesses

The parties have agreed to defer discussion of expert witness disclosures at least until March 23, 2007. Section II.1, *supra.*

### 10. Class Actions

As described in Section II.1, *supra*, the parties submit that further proceedings on Plaintiffs' class certification motion (Dkt. #5) should be deferred until after the Court rules on a motion for summary judgment, if this action is not voluntarily dismissed.

11.   **Bifurcation of Discovery**

*See* Sections II.1, and II.7-10 *supra*.

12.   **Pretrial Conference**

The parties believe that it is premature to set a date for a pretrial conference.  Section II.1, *supra*.

13.   **Trial Date**

The parties believe that it is premature to set a firm trial date.  Section II.1, *supra*.

Dated March 2, 2007                                              Respectfully submitted,


_____/s/_____                    _____/s/_____
Stephen H. Ring (DC Bar #255562)               Mitchell R. Berger (DC Bar # 385467)
Eric J. Menhart                                Alexandra E. Chopin (DC Bar # 490736)

STEPHEN H. RING, P.C.                          PATTON BOGGS LLP
20300 Seneca Meadows Parkway, Suite 200        2550 M Street, N.W.
Germantown, Maryland  20876                    Washington, D.C. 20037
Phone: (301) 540-8180                          Phone: (202) 457-6000
Fax:    (301) 540-8195                         Fax:    (202) 457-6315

John Blim                                      *Attorneys for Defendant InPhonic, Inc.*
Jay Edelson
Myles McGuire
BLIM & EDELSON, LLC
53 West Jackson Boulevard, Suite 1642
Chicago, Illinois 60604
Phone: (312) 913-9400
Fax:    (312) 913-9401

John G. Jacobs
Bryan G. Kolton
THE JACOBS LAW FIRM, CHTD.
122 South Michigan Avenue, Suite 1850
Chicago, Illinois  60603
Phone: (312) 427-4000
Fax:    (312) 427-1850

*Attorneys for Plaintiff Joe Shields*